IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARGARET B. MCNEELY, as Personal )
Representative of the Estate of Leila )
Cheadle, and on behalf of Herself and )
Others Similarly Situated; )
)
           Plaintiff, )
)
vs. )  Case No. CIV-07-933-M
)
NATIONAL MOBILE HEALTH CARE, )
L.L.C. and SECURITY LIFE )
INSURANCE COMPANY OF AMERICA, )
)
           Defendants. )

## ORDER

Before the Court is defendant National Mobile Health Care, L.L.C. ("National Mobile") with its motion for summary judgment [docket no. 16], filed November 14, 2007. On December 3, 2007, plaintiff filed her response, and on December 26, 2007, defendant National Mobile filed its reply. On April 17, 2008, plaintiff filed her supplemental response in opposition to the motion for summary judgment based upon a continuance granted pursuant to Federal Rule of Civil Procedure 56(f). Based upon the parties' submissions, the Court makes its determination.

I.    INTRODUCTION

Plaintiff commenced this action on behalf of her mother, Leila Cheadle, who resided in Edwards Redeemer Nursing Center in Oklahoma City, Oklahoma before she died on May 4, 2006. Defendant National Mobile sold a dental insurance policy to Ms. Cheadle while she was a facility resident receiving Medicaid assistance. The monthly premium charged for the dental insurance policy was $40. In exchange for this premium payment, policyholders are covered, among other things, for denture-related services as medically appropriate. As a Medicaid recipient, Ms. Cheadle

was subject to Medicaid's spend-down provisions whereby her excess assets or income was utilized to pay for the nursing home care expenses. Specifically, the regulations permitted Ms. Cheadle to retain $50 of her income monthly as a personal needs allowance not subject to the spend-down provisions. The $40 monthly premium for the dental insurance policy was deducted from Ms. Cheadle's personal funds as an allowable expense subject to spend-down provisions. Therefore, the $50 a month personal needs allowance was unaffected by the $40 monthly premium which Ms. Cheadle paid for a number of months before her death. At issue is whether the $40 a month premium was properly paid from plaintiff's personal funds or should have been paid from another source: the daily rate for routine services which Edwards Redeemer Nursing Center received from Medicaid.

This proposed class action was commenced by plaintiff on behalf of numerous medicaid eligible citizens who purchased dental insurance from defendant National Mobile. Plaintiff alleges the dental insurance policy violates Medicaid regulations, is illegal, and thus is void. Furthermore, plaintiff asserts claims for unjust enrichment and restitution, the tort of conversion, and violation of the Oklahoma Consumer Protection Act. Defendant National Mobile now moves for summary judgment concerning plaintiff's claims.

II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving

party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

## III.   DISCUSSION

### A.   Economic Injury

Defendant National Mobile asserts that plaintiff has sustained no economic injury because there is no net cost to the nursing home resident for the dental insurance.  Specifically, defendant National Mobile contends:

> [f]or the typical nursing home resident who is a Medicaid recipient, a set rate, or 'vendor payment,' is determined by [the Oklahoma Department of Human Services], or its agent, for the nursing home charges for the resident.  The resident pays all of her income to the nursing home (except for certain allowable deductions), and the remainder of the nursing home rate is paid by Medicaid.  42 C.F.R. §436.832(a); 42 C.F.R. §436.833(a).  The 'certain deductions' allowed from the resident's income before it is paid to the nursing home include a 'personal needs allowance' in the amount of $50.00. Also included in the 'certain deductions' is health insurance premiums such as dental insurance premiums.  42 C.F.R. §436.832(c)(4)(I); 42 C.F.R. §435.733(c)(4)(I). The dental insurance premium is also deducted from the amount the resident pays the nursing home so that the net result is that the resident still has her $50.00 'personal needs allowance' after the payment of the dental insurance premium.

Motion for Summary Judgment at 4-5.

Defendant National Mobile further asserts that Ms. Cheadle's social security income was $493 per month and of this amount, her payment to the nursing home was $403 monthly after deductions of $50 for her personal needs allowance and $40 for her dental insurance policy premium. Even if she had not paid the $40 dental insurance policy premium, defendant National Mobile argues her nursing home payment would have been $443 after the $50 deduction for the personal needs allowance. Because Ms. Cheadle would have experienced no change in the amount of income she could take home under this scenario, defendant National Mobile contends that plaintiff suffered no damage for which claims can be asserted. The Court, however, finds the lack of damages and 'no net cost' arguments in this case do not support summary judgment.

It is well established that "equity eschews mechanical rules" and requires courts to exercise flexibility. *Alexander v. Okla.*, 391 F.3d 1155, 1164 (10th Cir. 2004); *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). "And so, a suit in equity may lie though a comparable cause of action at law would be barred." *Holmberg*, 327 U.S. at 396. Emphasis must be placed on the particulars of each individual case that is consistent with the central feature of equity jurisdiction: "the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." *Rosario-Torres v. Hernandez-Colon*, 889 F.2d 314, 321 (1st Cir. 1989); *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).

In this case, plaintiff asserts equitable claims for unjust enrichment and restitution.

> The object of restitution is to put the parties back into the position in which they were before the tainted transaction occurred. Restitution can be had by harnessing either doctrines that have their origin in the common law or those which spring from the equity side of our jurisprudence. The unifying theme of various restitutionary tools is the prevention of unjust enrichment. Equity courts have fashioned

> the fiction of a constructive trust in order to force restitution from one who was unjustly enriched. The Restatement of Restitution also uses the constructive trust device to explain the essence of this relief. It starts with the general principle that restitution will be available whenever one has received a benefit to which another is justly entitled. The inequity of retaining a benefit can spring from a variety of sources, such as fraud or other unconscionable conduct in which the recipient has received a benefit for which he has not responded with a quid pro quo. The remedy in restitution rests on the ancient principles of disgorgement. Beneath the cloak of restitution lies the dagger that compels the conscious wrongdoer to 'disgorge' his gains. Disgorgement is designed to deprive the wrongdoer of *all gains flowing from the wrong rather than to compensate the victim of the fraud*.

*Warren v. Century Bankcorporation, Inc.*, 741 P.2d 846, 852 (Okla. 1987).

The Court, having reviewed the parties' submissions, finds that defendant National Mobile's lack of damages and 'no net cost' arguments do not support summary judgment under theories of equitable relief. These contentions fail to recognize that the premium funding mechanism results in less money in the pre-spend down coffers of nursing home residents like Ms. Cheadle to avail themselves of other allowable deductions. Accordingly, the Court denies the motion for summary judgment concerning the economic injury.

    B.    <u>Oklahoma Administrative Code</u>

Defendant National Mobile next asserts that the Oklahoma Administrative Code requires that certain items and services be provided to Medicaid nursing home residents and further contends that Medicaid regulations permit premiums for the dental insurance policy to be funded from nursing home resident spend-down amounts. Pursuant to the Oklahoma Administrative Code concerning routine services:

> (a) Nursing facility care includes routine items and services that must be provided directly or through appropriate arrangement by the facility when required by [Medicaid] residents. Charges for routine

> services may not be made to resident's personal funds or to resident family members, guardians or other parties who have responsibility for the resident. If reimbursement is available from Medicare or another public or private insurance or benefit program, those programs are billed by the facility. In the absence of other available reimbursement, the facility must provide routine services from the funds received from the regular [Medicaid] vendor payment and [Medicaid] resident's applied income, or spend down amount.

O.A.C. §317:30-5-133.1(a). Regarding the dentures and related services, the pertinent provisions of the Oklahoma Administrative Code provide:

> (17) Dentures and Related Services. Payment for the cost of dentures and related services is included in the daily rate for routine services.... When the need for dentures is identified, one set of complete dentures or partial dentures and one dental examination is considered medically appropriate every three years. One rebase and/or one reline is considered medically appropriate each three years. It is the responsibility of the nursing facility to ensure that the member has adequate assistance in the proper care, maintenance, identification and replacement of these items. The nursing facility cannot set up payment limits which result in barriers to obtaining denture services. However, the nursing facility may restrict the providers of denture services to providers who have entered into payment arrangements with the facility. The facility may also choose to purchase a private insurance dental coverage product for each [Medicaid client]. The policy must cover at a minimum all denture services included in routine services. The member cannot be expected to pay any co-payments and/or deductibles.

O.A.C. §317:30-5-133.1(17).

Having reviewed the parties' submissions, the Court finds that denture and related services may require payment from a specific source of funding. It appears the pertinent regulation provides that payment is to be made from the specific source of "the daily rate for routine services" Medicaid provides. In light of the administrative code, resort to other sources of payment for routine services may, in fact, be inappropriate given that Medicaid would have paid for the portion of premiums specifically covering dentures and related services. Accordingly, the Court denies the motion for

summary judgment as to the Oklahoma Administrative Code.

### C. Oklahoma Regulatory Agencies

Defendant National Mobile asserts that the sale of dental insurance was done with the knowledge, consent and approval of the Oklahoma regulatory agencies. Specifically, the insurance policy form was approved by the Oklahoma Insurance Department and the Oklahoma Department of Human Services("DHS"). Furthermore, defendant National Mobile contends that the Oklahoma Health Care Authority ("OHCA") is aware of the dental insurance being provided to nursing home residents on Medicaid.

An agency's interpretation of a regulation, however, is only required when an ambiguity is shown to exist. "When more than one meaning may be attributed to the terms of a regulation, we look to the interpretation given to the regulation by those charged with the duty of executing it." *Bell v. Phillips Petroleum Co.*, 641 P.2d 1115, 1121 (Okla. 1982). While great deference must be given to an agency's construction, there is no requirement "that it be allowed to misapply a statute that...was 'not ambiguous and does not require construction.'" *Sholer v. State ex rel. Dept. of Pub. Safety* 945 P.2d 469, 474 (Okla. 1995).

Having reviewed the parties' submissions, the Court finds that any alleged state agency approval of the dental insurance policy in question does not support summary judgment. Specifically, the Court finds no ambiguity when reviewing the relevant administrative code provision and, therefore, finds no construction or agency interpretation is required in this case. Accordingly, the Court denies the motion for summary judgment as to this basis.

### D. Minimum Required Coverage

In an effort to refute plaintiff's position that the dental insurance policy is illegal because it

charges deductibles and co-payments for dentures and related services, defendant National Mobile asserts that the dental coverage exceeds the minimum requirements set forth in the regulations governing Medicaid. However, the relevant provision states if "a private insurance dental coverage product" is utilized to fulfill resident denture and related needs, "[t]he member cannot be expected to pay any co-payments and/or deductibles." O.A.C. §317:30-5-133.1(17). Having reviewed the parties' submissions, the Court finds that defendant National Mobile's assertion regarding the dental insurance exceeding state minimum requirement may possibly lack merit. Specifically, is appears that the schedule of covered dental services displays certain denture-related deductibles and co-payments which may contravene the Medicaid regulation. In this respect, the dental insurance policy may be well be prohibited despite the areas where minimum coverage requirements are exceeded. Accordingly, the Court denies the motion for summary judgment as to the minimum required coverage.

   E. <u>Source of Payment</u>

   The invoices for the premium payments for Ms. Cheadle's dental insurance policy were sent directly to the nursing home where she resided. The premium payments for Ms. Cheadle's dental insurance policy were paid by a monthly check from the nursing home. Defendant National Mobile asserts that it was unable to affect or track the source of premium payment to ensure compliance with the applicable regulations. Plaintiff, however, disputes this assertion in that the nursing home submitted separate invoice numbers for each resident including Ms. Cheadle when providing the monthly premium payments. Having reviewed the parties' submissions and viewing the evidence in the light most favorable to plaintiff, the Court finds a genuine issue of material fact concerning whether defendant National Mobile was able to track or affect the source of premium payment

concerning the instant dental insurance policy. Specifically, plaintiff has submitted evidence tending to demonstrate that the source of payment can be tracked. Accordingly, the Court denies the motion for summary judgment as to the source of payment.

### F. Substantive Claims

Plaintiff has asserted claims for unjust enrichment and/or restitution, conversion and violation of the Oklahoma Consumer Protection Act. Defendant National Mobile contends that plaintiff cannot meet the elements of any of her claims as follows.

#### 1. Unjust Enrichment

Defendant National Mobile asserts that there was no expense to Ms. Cheadle and that full dental insurance policy benefits were provided at no net cost to her. Furthermore, defendant National Mobile asserts no claim or request for benefits was denied although she received regular visits from a licensed dentist over an extended time period. Because Ms. Cheadle would not have received these benefits if the dental insurance policy was not issued to her, defendant National Mobile contends that no unjust enrichment ever occurred.

However, the Oklahoma Supreme Court has expressed, "[a] contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void." *Birdwell v. Tri-State Ins. Co.*, 286 P.2d 736, 740 (Okla. 1955).  Having reviewed the parties' submissions and viewing the evidence in the light most favorable to plaintiff, the Court finds a genuine issue of material fact concerning whether defendant National Mobile was unjustly enriched. Specifically, plaintiff submitted evidence concerning the validity of the dental insurance policy, her payment of premiums and her economic harm. If plaintiff prevails, she would be entitled to the return of the monthly premiums under a

unjust enrichment theory of recovery. Accordingly, the Court denies the motion for summary judgment as to plaintiff's unjust enrichment and/or restitution claim.

### 2. Conversion

Defendant National Mobile asserts that Ms. Cheadle suffered no loss of property and that full coverage and benefits under the dental insurance policy were provided at no net cost to her. "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 753 P.2d 1330, 1332 (Okla. 1987). Having reviewed the parties' submissions and viewing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff has submitted evidence demonstrating that the dental insurance policy premiums left Ms. Cheadle with less of her pre-spend down money to apply, if she so desired, to the various pre-spend down deductions permitted by Medicaid. This "loss of personal property" supports the conversion claim asserted in this case. Accordingly, the Court denies the motion for summary judgment as to plaintiff's conversion claim.

### 3. Oklahoma Consumer Protection Act

Plaintiff alleges a claim for a violation of the Oklahoma Consumer Protection Act. Specifically, plaintiff asserts that defendant National Mobile committed "unfair trade practices" thereby violating Okla. Stat. tit. 15, §§752(14) and 753(20). Defendant National Mobile asserts that it has not engaged in any practice which offends established public policy or otherwise is in violation of the Oklahoma Consumer Protection Act.

Pursuant to Okla. Stat. tit. 15, §§752(14), "'[u]nfair trade practice' means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." One necessary element for an Oklahoma Consumer

Protection Act claim is "that the plaintiff, as a consumer, suffered an injury in fact." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).

Having reviewed the parties' submissions and viewing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether Ms. Cheadle, as a consumer, suffered an injury in fact. Specifically, plaintiff has come forward with evidence as set forth above that the dental insurance policy is illegal, and how the illegal nature of the dental insurance policy has deprived Ms. Cheadle of her personal property that otherwise could have been utilized for the various pre-spend down deductions permitted by Medicaid. Accordingly, the Court denies the motion for summary judgment as to plaintiff's Oklahoma Consumer Protection Act claim.

G.   Motion to Strike

Plaintiff objects to and moves to strike the deposition of Mr. David Branson attached to defendant National Mobile's motion for summary judgment. Because even considering Mr. Branson's deposition, the Court finds defendant National Mobile's motion for summary judgment should be denied, The Court finds the instant motion to strike is moot.

IV.   CONCLUSION

The Court, for the reasons set forth above, DENIES defendant National Mobile's motion for summary judgment. Furthermore, the Court finds the motion to strike is MOOT.

**IT IS SO ORDERED this 25th day of July, 2008.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

11