## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **Margaret B. McNeely,** | § | |
| | § | |
| **Plaintiff, as Personal** | § | |
| **Representative of the Estate of** | § | |
| **Leila Cheadle, and on behalf of** | § | |
| **Herself and Others Similarly** | § | |
| **Situated;** | § | |
| | § | |
| **v.** | § | **No. CIV-07-933-M** |
| | § | |
| **National Mobile Health Care, LLC and** | § | |
| **Security Life Insurance Company of** | § | |
| **America** | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court is "Plaintiff Margaret McNeely's Opening Motion For Class Certification, and Brief in Support" [docket no. 51], filed May 7, 2008.  On June 30, 2008, Defendants National Mobile Health Care, LLC and Security Life Insurance Company of America separately filed their responses, and on July 3, 2008, Defendant Security Life Insurance Company of America separately filed its amended response. Furthermore, Plaintiff filed her replies to each response on July 18, 2008.

Also before the Court is "Plaintiff Margaret McNeely's Unopposed Motion For Attorneys' Fees, Reimbursed Costs and for Incentive Award" [docket no. 75], filed October 9, 2008.

Based upon the parties' submissions, the Court makes its determination.

This is a proposed class action originally filed by Plaintiff Margaret McNeely ("Ms. McNeely") in Cleveland County, Oklahoma, subsequently removed to this Court under the Class Action Fairness Act of 2005 ("CAFA"). Ms. McNeely alleges Defendant National Mobile Health Care, LLC ("NMHC") has sold and Defendant Security Life Insurance Company of America ("Security Life") has underwritten an illegal dental insurance policy to residents of Oklahoma nursing facilities receiving Medicaid assistance ("the subject insurance policy"). Ms. McNeely alleges that certain characteristics of the subject insurance policy violate Oklahoma Medicaid regulations, Okla. Admin. Code §317:30-5-133.1 (2008) in particular. She asserts various causes of action under Oklahoma law. Her overarching claim is that due to the alleged illegal nature of the subject insurance policy, NMHC and Security Life must, in the form of restitution, return their respective shares of the monthly premiums received for the policy over time.

NMHC and Security Life vigorously deny Ms. McNeely's allegations and affirmatively claim that the subject insurance policy complies with applicable law. The Court has acquired briefing and evidence from all parties regarding the matter of class certification. However, on September 12, 2008, the parties filed a Joint Notice of Settlement advising that they mediated the case on July 30, 2008, have negotiated further since then, and have agreed to move for settlement class certification and seek a final settlement of this matter. On October 9, 2008, the parties filed a Joint Motion for Class Certification and Approval of Settlement, and for an Order Preliminarily Certifying Settlement Class, Preliminarily Approving Settlement Agreement, Approving Form of

Notice to Class Members, and Setting Date for Settlement Fairness Hearing (the "Joint Motion"). Attached to this motion, among other things, is a "Settlement Agreement" spelling out the essential terms of the parties' negotiated settlement. Proposed class counsel, Bailey/Crowe & Kugler, LLP and Maples and Associates, PC, have also filed an Unopposed Motion for Attorneys' Fees, Reimbursed Costs, and for Incentive Award.

The Court has reviewed these recent settlement-related filings and the evidence attached to them. The Court has also reviewed the parties' briefing and evidence regarding class certification submitted before the settlement transpired. Based on its review of these items, the Court, without prejudice to any class member to assert appropriate objections, finds this matter is suitable for settlement class certification and preliminarily approves the proposed class action settlement. In addition, the Court, subject to class member objections, preliminarily grants class counsel's Unopposed Motion for Attorneys' Fees, Reimbursed Costs, and for Incentive Award.

A certified class must satisfy the requirements of Fed. R. Civ. P. 23, even in a settlement context. *E.g. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Accordingly, the Court first will analyze the suitability of certifying this matter as class action under Rule 23. In doing so, ". . . .the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982) (quotation omitted); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974) ("Nothing in either the language or history of Rule 23 . . . gives a court any authority to

3

conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 381 (D. Colo. 1993).   After analyzing the elements of Rule 23 class certification, the Court will preliminarily address and discuss the overall fairness of the proposed settlement.   It will then address the adequacy of notice the parties propose to send out.   Finally, the Court will address and discuss its ruling on class counsel's Unopposed Motion for Attorneys' Fees, Reimbursed Costs, and for Incentive Award.

## I.

### Background and Ms. McNeely's Allegations

In approximately 1998, NMHC began marketing and selling the subject insurance policy to residents of Oklahoma nursing facilities, many of whom were receiving Medicaid assistance.   The subject insurance policy was underwritten by Defendant Security Life.   The subject insurance policy's premium, by and large, has been forty dollars ($40.00) per month since 1998.   NMHC has calculated the subject insurance policy, since 1998, to have been sold to more than five thousand (5,000) Oklahoma nursing facility residents receiving Medicaid assistance.

The subject insurance policy not only provides its insureds coverage for standard procedures such as teeth cleanings and fillings, but also coverage for dentures and certain denture-related services.   The subject insurance policy requires insureds to pay deductibles or co-pays in some limited circumstances.   No pre-determination of denture need is made before the subject insurance policy is sold to a given Medicaid resident.

In 2001, the Oklahoma Health Care Authority ("OHCA") added "Dentures and Related Services" to the list of items that Ms. McNeely alleges should be paid for out of the "daily rate for routine services" monies Medicaid periodically pays Oklahoma nursing facilities. The relevant portion of the applicable OHCA regulation containing this addition is as follows:

(a) Nursing facility care includes routine items and services that must be provided directly or through appropriate arrangement by the facility when required by Medicaid residents. Charges for routine services may not be made to resident's personal funds or to resident family members, guardians or other parties who have responsibility for the resident. If reimbursement is available from Medicare or another public or private insurance or benefit program, those programs are billed by the facility. In the absence of other available reimbursement, the facility must provide routine services from the funds received from the regular Medicaid vendor payment and Medicaid resident's applied income, or spenddown amount.

\*   \*   \*

(b)(17) Dentures and Related Services. Payment for the cost of dentures and related services is included in the daily rate for routine services. The projected schedule for routine denture services must be documented on the Admission Plan of Care and on the Annual Plan of Care. The medical records must also contain documentation of steps taken to obtain the service. When the provision of denture services is medically appropriate, the nursing facility must make timely arrangements for the provision of these services by licensed dentists. In the event dentures services are not medically appropriate, the treatment plan must reflect the reason the service is not considered appropriate, i.e., the patient is unable to ingest solid nutrition, comatose, etc. When the need for dentures is identified, one set of complete dentures or partial dentures and one dental examination is considered medically appropriate every three years. One rebase and/or one reline is considered appropriate each three years. It is the responsibility of the nursing facility to ensure that the client has adequate assistance in the proper care, maintenance, identification and replacement of these items. The nursing facility cannot set up payment limits which result in barriers to obtaining denture services. However, the nursing facility may restrict the providers of denture services to providers who have entered into payment arrangements with the facility. The facility may also chose to purchase a private insurance dental coverage product for each Medicaid client. The

> policy must cover at a minimum all denture services included in routine services. The client cannot be expected to pay any co-payments and/or deductibles. If a difference of opinion occurs between the nursing facility, client, and/or family regarding the provision of dentures services, the OHCA will be the final authority. All clients and/or families must be informed of their right to appeal at the time of admission and yearly thereafter. The client cannot be denied admission to a facility because of the need for denture services.

Okla. Admin. Code §317:30-5-133.1(a), (b)(17) (2008).  Ms. McNeely alleges that this regulation, which is unique to Oklahoma Medicaid governance, requires that Medicaid funds be utilized to pay for dentures and related services, either directly, as needed, or indirectly via the purchase of denture insurance.  *Id*.  The regulation also prohibits any charges for deductibles and co-pays related to these services, and further mandates that a documented need for dentures is established before dentures or insurance for them are sold. *Id*.

Dental and denture services provided under the subject insurance policy have historically been provided by Mobile Dental Care of Oklahoma, P.C. ("MDCO"), a third-party provider.  Invoicing and collection of subject insurance policy premiums have been handled by a third party administrator, Creative Retirement Strategies ("CRS").  As compensation for their respective roles NMHC, Security Life, MDCO and CRS share in the monthly policy premiums, which total approximately one million dollars ($1,000,000.00) annually.  The share retained by NMHC and Security Life, defendants here, is approximately 34.5% of the policy's premiums, or approximately three hundred forty-five thousand dollars ($345,000.00) per year.

In December 2002, while residing at Edwards Redeemer Nursing Center in Oklahoma City, Oklahoma, Ms. Leila Cheadle, the mother of Ms. McNeely[1], applied for and purchased the subject insurance policy.  Ms. Cheadle was an insured under the subject insurance policy until shortly before her death in May 2006, and was a Medicaid recipient during the entire time period.

Ms. McNeely principally alleges the subject insurance policy sold to her mother was an illegal contract.  She claims it is illegal in light of Okla. Admin. Code §317:30-5-133.1 (2008) because: 1) it was marketed and invoiced in a manner requiring her to utilize her personal funds – monthly social security income -- to pay the forty dollar ($40.00) monthly premiums; 2) the subject insurance policy requires insureds to pay deductibles or co-pays in some limited circumstances; and 3) there was no predetermination of denture need before Ms. Cheadle was sold the subject insurance policy.  Ms. McNeely claims the illegal contract creates a basis to assert NMHC and Security Life were unjustly enriched by having received approximately three hundred forty five thousand dollars ($345,000.00) in yearly premium income.  She thus requests restitution relief for her and the proposed class.  Ms. McNeely further asserts the Oklahoma law claims of conversion and for violations of the Oklahoma Consumer Protection Act.  Okla. Stat. tit. 15, §§ 752 (14), 753.20.  Again, NMHC and Security Life have denied all of Ms. McNeely's claims and assertions, and have affirmatively alleged that the subject insurance policy complies with all applicable laws and regulations.

---

[1]     Ms. McNeely has been appointed the personal representative of Ms. Cheadle's estate and brings this action in that capacity.

## II.

## The Proposed Settlement Class

Ms. McNeely, NMHC and Security Life propose a settlement class defined as follows:

a.  residents of Oklahoma nursing facilities;

b.  who are receiving or have received Medicaid assistance from the State of Oklahoma;

c.  who are eligible or have been eligible to receive services at no charge under Okla. Admin. Code §317:30-5-133.1 (2008); and

d.  who purchased or were covered under the Dental Plan at issue in the Litigation, on or after January 1, 2001;

but not the following individuals or categories of individuals:

i.  Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;

ii.  Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils, and/or subdivisions;

iii.  Any currently sitting Oklahoma state or federal court judge or justice and/or any persons within the third degree of consanguinity to such judge or justice;

iv.  Any person who has given notice to either NMHC or SLICA, by service of litigation papers or otherwise, and alleged he or she has suffered personal physical injury by virtue of the acts or omissions alleged herein;

v.  Individuals, if any, that have previously (i.e. on any date before this action is filed) demanded from either NMHC or SLICA, by service of litigation papers or otherwise, a return of all or part of the premium monies principally sought as damages herein, and received such monies, from either NMHC or SLICA, or from anyone or any entity acting on their behalf;

(the "Settlement Class").   The Settlement Class reflects a slight alteration from the proposed class described in Ms. McNeely's pleadings.   The proposed class in Ms. McNeely's pleadings is unlimited in time and does not account for the 2001 amendment to Okla. Admin. Code §317:30-5-133.1 (2008).   Because the amendment of this regulation essentially provides the sole basis for Ms. McNeely's action, the Court believes the "on or after January 1, 2001" alteration is a reasonable one and accepts it.

To satisfy the requirements of Rule 23(a), the class must be adequately defined so that potential class members can be identified. *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 637 (D. Colo. 1986).   Indeed, this fundamental consideration of class existence is the most basic consideration of all and the one that unifies and relates the narrower, more technical requirements of class certification. *Cyr v. Walls*, 439 F. Supp. 697, 703 (N.D. Tex. 1977).   However, the class does not have to be so easily ascertainable that every potential member can be identified at the beginning of the action. *Joseph,* 109 F.R.D. at 637.   Nevertheless, the class description must be sufficiently definite so that it is "administratively feasible" for the Court to determine whether a particular individual is a member. *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995).

The Court finds the settlement class definition the parties propose is sufficiently definite so that it is administratively feasible to identify class members.   Based on a review of the evidence submitted with class certification briefing, NMHC and Security Life have extensive records concerning the identity of Oklahoma purchasers of the subject insurance policy.   These records include mailing addresses that facilitate the

determination of whether these purchasers were residing in nursing facilities. Moreover, having the mailing addresses will enable the mailing of settlement class notice according to the terms of the proposed settlement, and consistent with Rule 23(c)'s "best notice that is practicable" standard.

## III.

## Elements of Rule 23(a)

### i. Numerosity

The first Rule 23(a) element is numerosity. The burden is upon the parties to establish that the proposed class is so numerous as to make joinder impracticable. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976)). The Tenth Circuit does not prescribe any set formula to satisfy the numerosity element, nor has it said numerosity may be presumed by a specific number of class members. *Trevizo*, 455 F.3d at 1162. Neither are the parties required to prove the identity of each class member or the specific number of members. *Stambaugh v. Kan. Dept. of Corr.*, 151 F.R.D. 664, 673 (D. Kan. 1993) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *Commander Prop. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995). Instead, because numerosity is such a fact-specific inquiry, the Court is granted "wide latitude" in making the determination. *Trevizo*, 455 F.3d at 1162.

The class-certification evidence shows the subject insurance policy has been purchased by over five thousand (5,000) Oklahoma Settlement Class members receiving Medicaid assistance. Many courts have certified classes with class member numbers, as

here, well in excess of one thousand members.  *See e.g. Marcantante v. City of Chicago*, No. 06 C 328; 2007 U.S. Dist. LEXIS 93780, at *7 (N.D. Ill. 2007).  The Rule 23(a)(1) element of numerosity is sufficiently established.

### ii.  Commonality

The second prerequisite to class certification is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a).  Importantly, commonality is not required for each issue that will be raised in the case. *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999).  Instead, "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Id.* (internal quotations omitted) (quoting *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995)).  In fact, commonality is "satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994).  As a result, the commonality requirement is oftentimes easily satisfied. *Id.* (citing I Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.10, 3-50 (3d ed. 1992)).

A review of the class-certification briefing and evidence reveals several questions of Oklahoma law or fact common to the class.  These include: 1) whether the subject insurance policy is illegal as per Okla. Admin. Code §317:30-5-133.1; 2) relatedly, whether NMHC and Security Life have wrongfully or inequitably retained their shares of subject insurance policy premium income over time; 3) for purposes of Ms. McNeely's conversion claim, whether NMHC and Security Life have exercised dominion and control over premium income retained that is inconsistent with the rights Ms. McNeely

and class members have in such funds; and 4) with regard to the OCPA, whether NMHC and Security Life have committed "unfair trade practice[s]", thereby "offending established public policy." Given the presence of these common questions of law and fact, the Court encounters no difficulty in finding Rule 23(a)(2) commonality. That element is satisfied.

### iii. Typicality

The purpose of the typicality requirement is to assure the interest of the named class representative aligns with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought. *Id.* Factual differences will not render a claim atypical if the claim is based upon the same legal or remedial theory and arises from the same events or course of conduct. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Edgington v. R. G. Dickinson and Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991). Typicality requires the class representative to have the same interests and seek a remedy for the same injuries as other class members. *See, e.g., E. Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977). However, there is no requirement that the class representatives have circumstances identical to those of the potential class members. *See Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert denied,* 460 U.S. 1069, 103 S. Ct. 1524, 75 L. Ed. 2d 947 (1983). In fact, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Id.* (citations omitted).

Ms. Cheadle resided in an Oklahoma nursing facility, Edwards Redeemer, and received Medicaid assistance while there.  She purchased the subject insurance policy early in her stay at Edwards Redeemer, and paid premiums for it until her May 2006 death.  The terms and contents of the subject insurance policy have not materially changed since the subject insurance policy was originally introduced in Oklahoma in 1998, and after the amendment to Okla. Admin. Code §317:30-5-133.1 came about in 2001.  Ms. McNeely is the duly appointed personal representative of Ms. Cheadle's estate.  Given Ms. McNeely's claims in this action, and these supporting facts, it is apparent Ms. McNeely has the same interests and seeks a remedy for the same injuries as other class members.  *E. Tex. Motor Freight Sys. Inc., supra.*  The Court finds the Rule 23(a)(3) element of typicality is also satisfied.

### iv. Adequacy of Representation

For plaintiffs to be fair and adequate representatives of the class, three requirements must be met: counsel must be qualified, experienced, and generally able to conduct the proposed litigation; the class representatives must have sufficient interest in the outcome to ensure vigorous advocacy; and the class representatives must not have antagonistic or conflicting interests with other members of the proposed class.  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L.Ed 2d 689 (1997); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002).

The Court's review of the work performed in this matter, and the class-certification evidence, shows Ms. McNeely's counsel are experienced litigators, including class action litigators.  They are eminently capable of conducting this matter as a class action, especially in light of the presumption of competence and experience that applies.  *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 161 (D. Kan. 1996).  (In the absence of contrary proof courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class.)

Moreover, as established by her declaration and deposition testimony, Ms. McNeely has a sufficient interest in the outcome of this matter to ensure vigorous advocacy.  She initially voiced concerns about the subject insurance policy to her counsel, has participated in the litigation by reviewing documents, by providing at least one lengthy declaration, by giving her deposition, and by attending mediation.  She is also familiar with the contours of the litigation and is genuinely concerned about the subject insurance policy having been sold to individuals similarly situated to her mother, Ms. Cheadle.  Finally, in order for a conflict of interest to render a named class representative inadequate, the conflict must be more than merely speculative or hypothetical. 5 James WM. Moore, Moore's Federal Practice, § 23.25[2][b][ii] (3d. ed. 2005). There must be a showing that the conflict is a real probability.  *Robertson v. Nat'l Basketball Ass'n*, 389 F. Supp. 867, 899 (S.D.N.Y. 1975).  The Court has seen no evidence, let alone any "real probability" that Ms. McNeely has antagonistic or conflicting interests with other members of the Settlement Class.

The Rule 23(a)(4) element of adequacy of representation is satisfied.  Plaintiff Ms. Margaret McNeely is hereby appointed Settlement Class representative.  Her counsel, David W. Crowe, John W. Arnold (Bailey/Crowe & Kugler, LLP) and L. Ray Maples II (Maples & Associates, P.C.), are all appointed Settlement Class counsel in this matter.

## IV.

### Elements of Rule 23(b)(3)

The proposed settlement provides partial restitution of subject insurance policy monthly premiums retained by NMHC and Security Life.  Indeed, Ms. McNeely principally sought such relief in initiating this litigation.  However, as part of the proposed settlement NMHC has agreed to cease marketing and selling, and Security Life has agreed to cease underwriting, the allegedly illegal subject insurance policy in Oklahoma.  Permanent injunctive relief is sought to facilitate that agreed relief.  This raises the initial question of whether settlement class certification, at least in part, may be appropriate under Rule 23(b)(2). [2]

Rule 23(b)(2) states class-wide injunctive relief is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

_____

[2]    Class actions maintained pursuant to Rule 23(b)(2) do not require individual notice and are subject only to the notice requirements of Rule 23(d) of the Federal Rules of Civil Procedure.  Pursuant to Rule 23(d), "notice may be given in such manner as the Court may direct . . . ."  *Olenhouse v. Commodity Credit Corp.*, 135 F.R.D. 672, 681 (D. Kan. 1991).  The Court further notes that class members in class actions certified pursuant to Rule 23(b)(2) have no right to "opt-out." *See Cook v. Rockwell Intern. Corp.*, 151 F.R.D. 378, 388 (D. Colo. 1993).

respect to the class as a whole." *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1288 (10th Cir. 1999); *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir. 2004).  Certification under Rule 23(b)(2) permits application of a common remedy to the class.  *Shook,* 386 F.3d 974.  The common remedy to the class here is the cessation of subject insurance policy sales.  Still, in this case monetary relief for Ms. McNeely and the class is the primary remedy sought by Ms. McNeely and agreed upon in the proposed settlement. Accordingly, Settlement Class certification is appropriate only if the Rule 23(b)(3) elements of predominance and superiority are satisfied.  *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 516 (D. N.M. 2004) ("Where monetary damages are the predominate remedy sought, certification is usually only appropriate pursuant to Fed. R. Civ. P. 23(b)(3).").  The Court will address those two elements in turn.

**i.     Predominance**

Satisfaction of the 23(a) commonality element does not satisfy the predominance inquiry of Rule 23(b), as the latter is "far more demanding" and tests "whether proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. "That common questions of law or fact predominate over individualized questions means that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."  *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (internal quotation omitted).  While individual issues can exist, they "must be of lesser overall significance than the common issues, and they must be manageable in a single class action." *Sanneman v. Chrysler Corp.,* 191 F.R.D. 441,

449 (E.D. Penn. 2000).  To determine whether class-wide issues predominate, the Court must consider the impact their resolution will have on each class member's underlying cause of action.  *Rutstein*, 211 F.3d at 1234.

Here, the principle issue is whether the subject insurance policy, as marketed and sold to Ms. Cheadle and members of the proposed class, is illegal for the various reasons discussed herein.  Any sub-issues created by this principle issue are uniform, mainly legal ones, especially to the extent the subject insurance policy's deductibles and co-payments – obvious from the face of the contract – serve as the basis of the illegality claim. Admittedly, some factual and legal examination may be required to determine if the subject insurance policy's denture component violates Okla. Admin. Code §317:30-5-133.1 as to each Settlement Class member.  But this examination, even if ultimately necessary, is not overly individualized and cannot detract from predominance, especially in view of the uniform Oklahoma Medicaid rules, because the subject insurance policy is basically a form agreement, because it is marketed the same way to class members receiving Medicaid assistance, and since it is bought and paid for similarly amongst Settlement Class members. *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968), *cert denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.ed 2d 459 (1969) (In deciding the predominance factor, the Court will consider whether there is a common nucleus of operative facts and whether material variations in the claims exist); *see also Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 299 (N.D. Ill. 2005)(form agreements supporting commonality and predominance); *Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993)(same); *Steinberg v. Nationwide Mut. Ins. Co.*, 224

F.R.D. 67, (E.D.N.Y. 2004)(citing *Morimore v. Federal Deposit Insurance*, 197 F.R.D. 432, 436, (W.D. Wash. 2000))(common course of defendant conduct supporting commonality and predominance).

The Court finds Rule 23(b)(3) predominance to exist.

**ii. Superiority**

The superiority requirement of Rule 23(b)(3) compels the Court to determine whether a class action is superior to other methods of adjudicating the controversy at issue. *Smith v. MCI Telecomm. Corp.*, 124 F.R.D. 665, 679 (D. Kan. 1989). The rule spells out four factors for the Court to consider in this inquiry. The Rule 23(b)(3) factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class**;** (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b). The Court has reviewed these factors against the backdrop of the allegations and evidence presented by the parties. Given the relatively small amount of money involved on a per-class-member basis – in most cases no more than a few hundred dollars – class members have no incentive to individually prosecute a similar action against NMHC and Security Life. In addition, since all class members receive Medicaid assistance, they are all indigent to a degree and presumably cannot pay lawyers. Further, neither the parties nor the Court is aware of any similar class action litigation in other Oklahoma courts concerning the subject insurance policy and the alleged actions of

NMHC and Security Life.  Finally, since Ms. Cheadle purchased the subject insurance policy in issue while residing in the Western District of Oklahoma, this Court is perfectly situated and qualified to handle this matter.

As to manageability, there will be no difficulty in the management of this action as a class action.  There are no multi-state choice of law issues to confront, as Oklahoma law exclusively applies to all claims Ms. McNeely has asserted.  Neither are there any fraud-based claims creating individual reliance issues which might, in turn, create predominance or manageability concerns.  Finally, given the ready availability of insured contact and premium payment information, the calculation, apportionment and distribution of settlement sums yield virtually no manageability concerns at all.  *See Smith v. MCI Telecomm. Corp.*, 124 F.R.D. 665, 677 (D. Kan. 1989) (citing *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977), cert. denied, 435 U.S. 968, 56 L. Ed. 2d 58, 98 S. Ct. 1605 (1978))("Thus, if the computation of damages following a ruling in favor of the class is a largely mechanical task, then 'the existence of individualized claims for damages seems to offer no barrier to class certification….'").

The Court finds a class action is the superior method to handle Ms. McNeely's claims against NMHC and Security Life.

## IV.

### The Proposed Settlement

Having determined the proposed class action meets the requirements of Rule 23 and should be certified as a settlement class, the Court now addresses whether the settlement proposed by the parties should preliminarily be approved.  The Court has

broad discretion in deciding whether to grant approval of a class action settlement. *Jones v. Nuclear Pharm., Inc.,* 741 F.2d 322, 324 (10th Cir. 1984).  "In exercising its discretion, the trial court must approve the settlement if it is fair and reasonable." *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 283 (D. Colo. 1997), citing *Jones,* 741 F. 2d at 324.

In making the determination whether to approve a class action settlement, the Court should "not  decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981). "This is because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson,* 171 F.R.D. at 284, *citing Williams v. First Nat'l Bank,* 216 U.S. 582, 595, 30 S. Ct. 441, 54 L. Ed. 625 (1910). The object of settlement is to avoid, not confront, the determination of contested issues: therefore, the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).  Instead, courts have consistently held that the function of a judge reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate and reasonable, not to rewrite the settlement agreement.  *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998).

### i.   The Tenth Circuit Settlement Approval Factors

The Tenth Circuit has outlined four non-exclusive factors to be considered in determining whether a proposed settlement of a class action is fair, reasonable, and adequate.  They are as follows:

1.      Whether the proposed settlement was fairly and honestly negotiated;

2.      Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

3.      Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

4.      The judgment of the parties that the settlement is fair and reasonable.

*In re Qwest Comm. Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039 (D. Colo. 2006),

citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

**ii. Overview of the Settlement**

The settlement proposed by the parties revolves around NMHC and Security Life ceasing sales of the subject insurance policy and establishing a common settlement fund of two million dollars ($2,000,000.00).  With the number of identified class members (projected to be approximately five thousand seven hundred individuals (5,700)), a settlement award will be calculated based on a division of the common fund amount, after class counsel's fee is deducted.  As discussed, *infra*, class counsel has petitioned the Court for a thirty-three percent (33%) fee.  Thus, the funds available to the class for the calculation is one million three hundred forty thousand dollars ($1,340,000.00).  There are approximately 154,000 total eligible Settlement Class member coverage months.  Thus, for each month an eligible Settlement Class member was: (i) a Medicaid recipient; and (ii) insured under the subject insurance policy, he or she will be entitled to an eight dollar and sixty-seven cent ($8.67) reimbursement.

A claims administrator has been retained at the expense of NMHC and Security Life, and the parties have proposed having the claims administrator perform both direct-

mail notice and publication notice in the *Tulsa World* and *Daily Oklahoman* newspapers. The notice will not only alert class members to the fact of settlement class certification, but will also give them the right to opt out of the settlement, or object to it.  If Settlement Class members elect to not opt out and participate in the settlement, they must fill out and return by mail a claim form which essentially verifies a given class member is a Medicaid recipient and has purchased and owned the subject insurance policy.  By agreement, any unclaimed settlement funds revert to Security Life.  The parties have further agreed to the following additional payments as follows: 1) up to fifteen thousand dollars ($15,000.00) in costs and expenses to be reimbursed to class counsel; and 2) up to a fifteen thousand dollar ($15,000.00) incentive award for Ms. McNeely.  In exchange for these settlement-related awards, Ms. McNeely has agreed to dismiss this action with prejudice as to all participating class members, and to provide a release on behalf of those same individuals.

### iii. The Settlement Was Fairly and Honestly Negotiated

With regard to this first factor, the Court is concerned with the protection of class members whose rights may not have been given "adequate consideration during the settlement negotiations." *Wilkerson*, 171 F.R.D. at 283; *see also* 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1979,1 (2d ed. 1986 &. 2001 Supp.). The Court is also required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). The fairness of the negotiating process is to be examined "in light of the experience of counsel, the vigor with which the case was prosecuted,  and [any] coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706

F.2d 426, 433 (2d Cir. 1983), cited in *Johnson v. City of Tulsa*, 2003 U.S. Dist. LEXIS

26379, at *26 (D. Okla, 2003); *Wilkerson*, 171 F.R.D. at 284.

It is not lost on the Court that a significant component of this settlement is NMHC

and Security Life ceasing sales of the subject insurance policy in Oklahoma.  Not only

has Ms. McNeely been able to obtain that relief, she has also obtained a sizeable

monetary award for class members, without creating any differing awards or treatment

amongst them.  As noted, each eligible Settlement Class member will be entitled to a

reimbursement of eight dollars and sixty-seven cents ($8.67) for each month he or she

was: (i) a Medicaid recipient; and (ii) insured under the subject insurance policy.[3]  The

evidence reveals NMHC and Security Life were contractually entitled to retain 34.5% of

each forty dollar ($40.00) monthly premium they were paid, or thirteen dollars and eighty

cents ($13.80).  Thus, the per month reimbursement award of eight dollars and sixty-

seven cents ($8.67) represents more than sixty-two (62%) of that amount.  In the Court's

view, this is a sound settlement based on those numbers alone.  Its soundness is enhanced

by the fact that many class members, including Ms. McNeely, have received some dental

care in exchange for the dental premiums they have paid.  Consequently, it can be argued

NMHC and SLICA should not be required to disgorge all subject insurance policy

---

[3]      In a class action settlement, "damages need not be calculated with precision in
determining a plan of allocation for settlement proceeds; the only requirement is that the
allocation be fair and reasonable." *In re Veritas Software Corp. Secs. Litig.*, 2005 U.S.
Dist. LEXIS 30880, No. C-03-0283 MMC, 2005 WL 3096079, at *7 (N.D. Cal. Nov. 15,
2005).

premiums they have received since 2001.  Some of those premiums arguably went to fund a legitimate, legal purpose: non-denture dental care or treatment.

Moreover, the Court does not detect any unfairness in the settlement negotiating process.  The case was mediated by Mr. Joe Paulk on July 30, 2008.  Involved counsel have submitted evidence regarding the overall fairness of the mediation, post-mediation negotiations, and the ultimate settlement.  At the time the case was mediated Ms. McNeely and her counsel had investigated the merits of the case and filed suit, the parties had exchanged significant written discovery, had taken corporate witness and party depositions, had filed and responded to at least one summary judgment motion, and had fully and extensively moved for and briefed the issue of class certification.  Ms. McNeely had also retained at least one potential expert witness.  The Court is convinced the negotiated settlement is the product of Ms. McNeely, her experienced class counsel, and defendants having diligently litigated this action, and of them possessing adequate information about the potential benefits and risks of proceeding forward to class certification and trial.  *See e.g. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.), cert. denied sub nom., *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation, Third § 30.42 (1995))).  The first factor is satisfied.

### iv. Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation In Doubt

The next factor requires an examination of whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.  The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.  *In re Qwest Commc'n Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *16-18 (D. Colo. 2006).  Although the Court has ruled against NMHC with respect to its motion for summary judgment, that ruling provides no guarantee that Ms. McNeely will ultimately prevail on the merits.  The Court has reviewed the extensive briefing and evidence presented by the parties thus far.  In doing so it has become familiar with the facts and legal standards applicable to them.  The Court finds questions of law and fact to exist on a sufficient magnitude to warrant preliminary approval of the proposed settlement.  The Tenth Circuit's second settlement-approval factor is satisfied.

### v. Whether the Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

As for the third factor, the 'value of an immediate recovery' means 'the monetary worth of the settlement.'  *Wilkerson,* 171 F.R.D. at 283.  The Court has already discussed the monetary worth of this settlement, including why that sum is fair and reasonable in the circumstances.  The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted.  In addition, the fact that monetary relief is coupled with cessation of subject insurance

policy sales in Oklahoma -- an action that would be delayed absent a present-day settlement -- removes any doubt that this settlement is sufficiently valuable to warrant approval. The Court finds this third element is satisfied.

### vi. The Judgment of the Parties that the Settlement Is Fair and Reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp*., 234 F.R.D. 688, 695 (D. Colo. 2006); *Marcus v. Kansas Dept. of Revenue*, 208 F. Supp. 2d 1179, 1183 (D. Kan. 2002). Here, counsel for Plaintiffs and Defendants have arrived at an arms' length negotiated settlement which provides benefits to Ms. McNeely, members of the class, NMHC and Security Life. In addition, since part of the settlement involves the cessation of subject insurance policy sales, the settlement creates scores of unknown, future class-settlement beneficiaries. The Court holds the fourth factor is established as well.

In summary, based upon the totality of the evidence offered with respect to each of the four factors identified by the Tenth Circuit, the Court concludes the proposed class action settlement is fair, reasonable and adequate.

### V.

### Class Notice

"Under Fed. R. Civ. P. 23(e)(1)(B), a district court approving a class action settlement must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). "In addition to the requirements of Rule 23, the constitution's Due Process Clause also

guarantees unnamed class members the right to notice of certification or settlement." *Id*. at 943-44.  Generally, the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort if necessary.  Finally, the law merely requires "adequate notice, not perfect notice." *Uhl v. Thoroughbred Tech. & Telecomm. Inc.*, 2001 U.S. Dist. LEXIS 13115 (D. Ind. 2001).

The "Settlement Agreement" attached to the Joint Motion contains a proposed notice plan, along with a draft of the class certification/settlement mail notice and print notice for which the parties seek approval.  The notice plan contemplates direct mailings to the billing addresses of all class members.  In most cases these addresses will be the Oklahoma nursing facilities at which subject insurance policy subscribers have resided. NMHC's business records contain this billing-address information.  To account for the possibility of deceased class members and the need to send notice information to estate representatives, the parties contemplate supplemental notice via publication in Oklahoma's two major daily newspapers.  Finally, if any class member has questions about the class certification or settlement, a 1-800 number has been established to handle those questions.[4]  The court finds the manner of notice to be reasonable, and to satisfy both Rule 23 and constitutional due process standards.

---

[4]      "As a practical matter, notice cannot include all information that might be of concern to absentee class members." 2 Newberg on Class Actions §8.31 at 8-102 (3d ed. 1992).  Consequently, "some procedure [should be provided] whereby class members, seeking more detailed information, can examine relevant data." *Id*.      Sufficient information should be provided "so that each class member can make a rational judgment

As for the content of the notice, the parties contemplate a form of notice that complies with Fed. R. Civ. P. 23(c)(2)(B).  The notice is drafted in plain, easily understood language, and clearly and concisely describes the nature of the action, contains the class definition, and sets forth the class claims and issues.  Moreover, the notice explains that any class members that so desires may enter an appearance through an attorney, explains the opt-out rights, and how the opt-out rights must be executed. Finally, the notice adequately articulates the settlement's impact on class members in the event they choose not to opt out.

The Court approves of the proposed notice plan, including the manner and form of notice.  All parties and the claims administrator are ordered to comply with the notice plan in mailing out notice and in processing the claims forms sent in by participating class members.

---

on whether to exclude himself from the action." 7B Charles Alan Wright et al., Federal Practice and Procedure, § 1787 at 220 (2d ed. 1986). See 2 Newberg on Class Actions, § 8.04 at 8-17 ("the purpose of [Rule 23(c)(2) is to] allow[] parties to make conscious choices that affect their rights in a litigation context.").

# VI.

## Attorneys' Fees

The settlement creates a common fund of two million dollars ($2,000,000.00).[5] The preferred method of determining a reasonable attorney fee award in common fund cases is the percentage of fund analysis.  *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482-483 (10th Cir. 1993).   Class counsel, Bailey/Crowe & Kugler, LLP and Maples & Associates, PC, have moved for an attorneys' fee constituting thirty-three percent (33%) of the common fund, or six hundred sixty thousand dollars ($660,000.00).[6]   NMHC and Security Life do not object to a fee award of this amount.   In making the determination of whether the requested fee is reasonable, the Court must consider the following twelve (12) so-called *Johnson*[7] factors: (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion

---

[5]      In determining the total amount of the common fund, it is proper to include agreed-upon fees and costs in addition to class damages.  *See e.g. Staton v. Boeing Co.,* 327 F.3d 938, 972 (9th Cir. 2003) (holding that "the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the Court for an award from the fund, using common fund fee principles." (Emphasis added.)); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.").

[6]      "The allocation of the fee award between the various firms and attorneys who made up class counsel is left to those parties."  *See In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1416 (D. Wy. 1998).

[7]      *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

of other employment by the attorneys due to acceptance of the case, (5) the customary

fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the

client or the circumstances, (8) the amount involved and the results obtained, (9) the

experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case,

(11) the nature and length of the professional relationship with the client, and (12) awards

in similar cases.  *E.g. Rosenbaum*, 64 F.3d at 1445 n. 3.[8]

Class counsel have submitted evidence confirming hundreds of hours have been

spent prosecuting this action, not only regarding certification and the merits, but also

negotiating and bringing about this settlement.[9]  As for the novelty and difficulty of the

---

[8]    While the *Johnson* factors must be addressed, "rarely are all the *Johnson* factors applicable; this is particularly so in a common fund situation." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988).

[9]    Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the "time and labor required" factor.  *See Brown*, 838 F.2d at 456 ("We hold here only that in awarding attorneys' fees in a common fund case, the 'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record.")  Even if a lodestar formulation and analysis is required, the Court, based on the evidence submitted, finds it would adequately support the requested fee.  Finally, class counsel's willingness to prosecute this matter on a contingent basis, as discussed below, ordinarily shifts the analytical focus away from hours spent on the case to the ultimate result class counsel has obtained.  *See e.g. In re Harrah's Entm't*, 1998 U.S. Dist. LEXIS 18774, at *15 (E.D. La. November 25, 1998)("To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.").  As the Court has noted, the result is a fair and

questions presented, the Court yet again notes it has received and reviewed substantial briefing on the legal and factual issues involved.  Not only do difficult issues involving Oklahoma law exist, including those involving complex Medicaid regulations, there are also difficult issues of federal Medicaid law and federal constitutional standing to sue that have been raised, fleshed out, and argued.  Class counsel are qualified to handle these issues and, in the Court's view, have done a competent and thorough job of navigating their way through the different phases of this difficult litigation, as well as through the different certification and merits-related arguments NMHC and Security Life have raised. Further, given their experience and degree of competence, it is not surprising class counsel, as their evidence indicates, have had other employment opportunities, some hourly and others contingent, and have foregone some of them in order to take on and handle Ms. McNeely's case.

Class counsel have executed a contingent-fee agreement with Ms. McNeely and represent Ms. McNeely in this matter on a contingent-fee basis.  The contingent-fee agreement allows class counsel to apply to the Court for a fee of up to forty percent (40%) of any common fund recovery.  Class counsel's application for a reduced thirty-three percent (33%) fee here demonstrates class counsel has the best interests of the Settlement Class in mind.  They are foregoing their contractual rights to ensure more money is available to provide a remedy to the Settlement Class.  The requested one-third fee is customary, too.  Fees in the range of at least one-third of the common fund are

reasonable one, even factoring in the subtraction of attorneys' fees from the common fund.

frequently awarded in class action cases of this general variety.  *See e.g. Lucas v. Kmart Corp*., 2006 U.S. Dist. LEXIS 51420 at **18-19 (D. Colo. July 27, 2006); *Vaszlavik v. Storage Tech. Corp*., 2000 U.S. Dist. LEXIS 21140 at **4-5 (D. Colo. March 9, 2000); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins*., 1993 U.S. Dist. LEXIS 19969 at *2 (W.D. Okla. June 8, 1993)("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *see also* 4 Robert Newberg, *Newberg on Class Actions* § 14:6 at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Finally, when recovery is "highly contingent" and it is determined counsel's efforts "were instrumental in realizing recovery on behalf of the class," the eighth "results obtained" factor can be accorded a greater weight.  *See Brown*, 838 F.2d at 456; *Millsap v. McDonnell Douglas Corp*., 2003 U.S. Dist. LEXIS 26223 at **41-42 (N.D. Okla. May 28, 2003); *In re Qwest Commc'n Int'l Secs. Litig.*, No. 01-cv-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71267 at *23 (D. Colo. September 29, 2006).  The Court reiterates that this matter involves different, complex subject matters.  Given these complexities, its outcome is not a certainty, one way or the other.  Class counsel have been instrumental in obtaining a fair, reasonable and adequate two million dollar ($2,000,000.00) common fund for the Settlement Class.  The Court thus accords a greater weight to eighth "results obtained" factor.

Having considered each of the twelve *Johnson* factors – placing special emphasis on the eighth "results obtained" factor -- the Court preliminarily approves of class counsel's requested fee of six hundred sixty thousand dollars ($660,000.00).

## VII.

### Reimbursed Litigation Costs and Incentive Award to Ms. McNeely

The "Preliminary Settlement Agreement" reached between the parties permits class counsel to obtain reimbursement for up to fifteen thousand dollars ($15,000.00) in litigation costs. It also provides for an agreed-upon fifteen thousand dollar ($15,000.00) incentive award for Ms. McNeely. The agreement indicates NMHC and Security Life will separately pay these amounts. However, because these amounts arguably should be included in the class common fund, *see* footnote 5, *supra*, the Court will determine whether they are appropriate in the context of this settlement.

First, the Court has reviewed class counsel's requests for litigation costs reimbursement in the amount of fifteen thousand dollars ($15,000.00). These costs are appropriate, reasonable, and legally authorized especially in light of their substance, the status of the litigation, and nature and the size of the common fund counsel has obtained. The Court preliminarily approves of the requested costs reimbursement in the amount of fifteen thousand dollars ($15,000.00).

Next, as for the incentive award sought for Ms. McNeely, "[a]n incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual

or any additional effort expended by the individual for the benefit of the lawsuit." *Berrios v. Sprint Corp.*, 1998 U.S. Dist. LEXIS 22833, *9 (S.D.N.Y. 1998); *see also Roberts v. Texaco*, 979 F. Supp. 185, 187-88 (S.D.N.Y. 1997)(approving incentive awards for a class plaintiff who "provided valuable assistance to counsel in prosecuting the litigation").  Based on the Court's review of the evidence presented and Ms. McNeely's involvement in this litigation, as discussed in connection with Rule 23's adequacy-of-representation element, the Court finds the requested incentive award is appropriate.  It is all the more appropriate given the structure of the proposed settlement, as the incentive award "will not diminish any of the other benefits provided to any Class Member." *Desantis v. Snap-On Tools Co., LLC*, No. 06-cv-2231, 2006 U.S. Dist. LEXIS 78362 at *34-35 (D.N.J. October 27, 2006).

The court preliminarily approves of the requested fifteen thousand dollar ($15,000.00) incentive award to Ms. McNeely.

## VIII.

### Conclusion and Order

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:**

1. The Court has jurisdiction over the subject matter of this litigation;

2. Based on the class certification briefing and evidence, and as requested in the Joint Motion, that all elements of Rule 23(a) and 23(b)(3) are satisfied, and that this matter preliminarily be certified as a class action as to the individuals comprising the Settlement Class only, and for settlement purposes only.  Further, that Ms.

Margaret McNeely is appointed Settlement Class representative, and must perform all duties and obligations such an appointment entails;

3. Based on the class certification briefing and evidence, the Joint Motion, and the evidence attached thereto, that the proposed settlement is fair, reasonable and adequate to the Settlement Class and is preliminarily approved in all respects;

4. Based on the class certification briefing and evidence, the Joint Motion, and the evidence attached thereto, that the proposed mail notice to be sent to the Settlement Class, and the proposed publication notice, comport fully with both Rule 23 and due process, is the best notice that is practicable, and is approved. Further, that all parties and the claims administrator shall comply with the notice plan set forth in the "Settlement Agreement" in mailing out notice, and in processing the claims forms sent in by participating members of the Settlement Class. Finally, that NMHC and Security Life be required to file with the Court proof of the due mailing of notice and proof of publication of notice no later than three (3) days before the scheduled fairness hearing, and deliver copies of same to Settlement Class counsel;

5. That David W. Crowe, John W. Arnold and L. Ray Maples, II are appointed Settlement Class counsel, and shall fulfill all duties and obligations such an appointment entails. Further, having considered each of the twelve *Johnson* factors in relation to their requested fee and the evidence presented, that class counsel's requested fee of six hundred sixty thousand dollars ($660,000.00) is preliminarily approved;

6. That class counsel's requested litigation expense reimbursement of fifteen thousand dollars ($15,000.00) and the requested incentive award to Ms. McNeely of fifteen thousand dollars ($15,000.00) are preliminarily approved;

7. That NMHC and Security Life shall make any and all payments required by the "Settlement Agreement", on the dates, at the times, and in the manner prescribed by that agreement, and that, in general, all parties and their counsel are to abide by and perform as per the terms and obligations of the "Preliminary Settlement Agreement";

8. That a Settlement Fairness Hearing shall be conducted before the Court on the 18th day of December, 2008 at 10:00 a.m.  Fair and adequate notice of this hearing shall be included in the notice materials mailed and published to the Settlement Class, as described and addressed herein.  At this hearing, the Court shall consider the following topics:

   a.   Whether to finally certify this matter as a settlement class, whether to finally approve the class settlement, whether to finally approve class counsel's request for fees and expense reimbursement, and whether to finally approve of Ms. McNeely's incentive award;

   b.   Any proper and timely objections to the class settlement, the preliminary attorneys' fee award, or the expense reimbursement and Ms. McNeely's incentive award;

   c.   Any other matters properly bought before the Court concerning this action and the proposed settlement;

9.  That any person who wishes to appear at the Settlement Fairness Hearing through separate counsel and/or to challenge the fairness, reasonableness and adequacy of the class settlement, or any aspect thereof, shall fully and timely comply with any and all pre-hearing filing, form, procedure and deadline requirements set forth in the notice the Court has ordered to be mailed and published.  Any objector who fails to strictly adhere to these shall not be permitted to raise or pursue an objection at the Settlement Fairness Hearing, and such failure shall constitute a waiver of any objection to the class settlement, the preliminary attorneys' fee award, the expense reimbursement, Ms. McNeely's incentive award, and related matters.

10. That Class Counsel shall provide counsel for NMHC and Security Life copies of any requests for exclusion received by Class counsel within five (5) business days of Class Counsel's receipt of any such requests, and shall inform counsel for NMHC and Security Life of the percentage of the Settlement Class in which such Requestors opted out within seven (7) days of the Settlement Fairness hearing, to the extent Class Counsel are able to do so based on the information provided by NMHC and Security Life, and assuming the requests for exclusion are timely received and accurately completed.  To the extent late requests for exclusion are received or further investigation must be performed to determine this, class counsel shall supplement such information to counsel for NMHC and Security Life as soon as reasonably practicable, and prior to the Settlement Fairness hearing, if possible.

11. That this order is a non-final, non-appealable preliminary order.   After the Settlement Fairness Hearing is conducted, and objections, if any, to the proposed settlement and related matters are evaluated and analyzed, the Court may alter, modify, amend, supplement or vacate the contents of this order as it deems necessary or appropriate.  Or, the Court may adopt the contents of this order, with modest or material changes, in issuing a final order approving this settlement.

**Signed this 27th day of October, 2008.**

**IT IS SO ORDERED.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE